

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| **MICHAEL DAVID BELLOW, JR.,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO: 1:10-CV-165** |
| | § | |
| **UNITED STATES DEPARTMENT** | § | |
| **OF HEALTH AND HUMAN SERVICES,** | § | |
| ***et al.*,** | § | |
| *Defendants.* | § | |

## REPORT AND RECOMMENDATION ON MOTION TO DISMISS

The District Court referred this civil action to the undersigned United States Magistrate

Judge, at Beaumont, Texas, for determination of non-dispositive pretrial matters and the entry of

findings of fact and recommended disposition on case-dispositive matters pursuant to 28 U.S.C. §

636 and the Local Rules for the United States District Court for the Eastern District of Texas.

Pending before the Court for purposes of this report is the defendants' *Motion to Dismiss Under*

*Federal Rule of Civil Procedure 12(b)(1)* (doc. #15).

### Background

A.      Plaintiff's Claims

On March 24, 2010, the *pro se* plaintiff, Michael Bellow, filed the above-styled action against

the defendants, United States Department of Health and Human Services ("HHS"); Kathleen

Sebelius, Secretary of HHS; the United States Department of the Treasury ("the Treasury"); Timothy

Geithner, Secretary of the Treasury; the United States Department of Labor ("DOL"); and Hilda L.

Solis, Secretary of the DOL (collectively, "defendants").  The plaintiff's complaint challenges the

constitutionality of an Act of Congress, specifically referred to by plaintiff as H.R. 3590, commonly

known as the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (Mar.

23, 2010) ("ACA").  *See Complaint* (doc. #1).

      In the pleading, Bellow claims that "the Act is an unconstitutional encroachment into to [sic]

lives of individuals living in America by mandating that all citizens and legal residents of the United

States have qualifying healthcare coverage or pay a tax penalty."  *See Complaint*, at p. 1.  He avers

that "[t]he Constitution nowhere authorizes the United States to mandate, either directly or under

threat of penalty, that all citizens and legal residents have qualifying healthcare coverage."  *Id.*  He

further complains that "[b]y imposing such a mandate, the [ACA] exceeds the powers of the United

States under Article I of the Constitution and violates the Tenth Amendment to the Constitution."

*Id.*

      Bellow goes on to allege that the tax penalty required under the ACA constitutes an unlawful

capitation or direct tax and the ACA violates the Fourth Amendment of the Constitution by

"unreasonably searching and requiring unwarranted access to every American's personal health

insurance records for verification of health insurance."  *Id.*

      Finally, Bellow states that he "is an American citizen whose constitutional rights have been

infringed upon by said Act through the Act's future tax penalty that could be imposed on him for

simply being alive in America and through the [ACA's] requirement to have health insurance which

goes beyond the realm of regulating and enters into the realm of forcing a citizen to buy a private,

personal service against their [sic] will."  *Id.*  These are the only facts which Bellow sets forth about

himself in the complaint.

The plaintiff seeks declaratory and injunctive relief.  *Id.*  at p. 2.  Specifically, he requests that the Court declare the ACA to be in violation of various provisions of the United States Constitution, including the Fourth Amendment and the Tenth Amendment.  He also requests a declaration that the defendants have violated his Constitutional "right[s] of freedom, public health, and welfare."  Bellow further requests an injunction enjoining the defendants and any other United States agency or employee from enforcing the ACA, and that the Court award him reasonable fees and costs.  *Id.*

B.     Motion to Dismiss, Response and Reply

*The Defendants' Motion*

On November 29, 2010, the government defendants collectively filed a motion to dismiss the plaintiff's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See Motion to Dismiss* (doc. #15).  The defendants generally argue that the plaintiff lacks standing to bring suit because he has not pled an injury.  *See id.*  The parties have completed briefing on that motion and it is now ripe for disposition by the Court.

More specifically, the defendants argue that the plaintiff's complaint is a generalized grievance rather than a claim alleging particularized facts that demonstrate a present, concrete injury to the plaintiff. *See Motion to Dismiss*, at p. 4.  Defendants further contend that his allegations frame policy objections rather than a particularized injury.  *Id.*  at p. 5.  The motion to dismiss also contends that the plaintiff alleges no facts establishing how the minimum coverage provision of the ACA affects him personally.  *Id.*  at p. 9.  Accordingly, the defendants argue that Bellow lacks standing to bring suit based on his pled claims and that the case should be dismissed for lack of subject matter jurisdiction.

*Plaintiff's Response*

On December 10, 2010, the plaintiff filed his response to the motion to dismiss (doc. #16). In his response, Bellow avers that his complaint "pertains to issues involving constitutional rights

and federal laws, and is not just simply one individual's dislike of government policy." *See Response,* at p. 1. He contends that the ACA will affect him because he is forced to pay for a private health service or pay a penalty to the government. *Id*. at p. 2. He also states that he did not present more information about himself in the complaint other than that he is an American citizen because "that is all the information needed because this law applies to ALL American citizens." *Id.* (emphasis in original). He does go on to state that he "is a 26 year old working male and does not get free health insurance and is not exempt from having coverage. Therefore the plaintiff must pay for health insurance coverage, a private health service, or the government will penalize [him], therefore directly damaging the plaintiff through an unconstitutional power that amounts to a direct tax." *Id.* Bellow further argues that "[t]he penalty not going into effect until 2014 has no effect on the fact that, as the law stands, the plaintiff must pay for private healthcare coverage or face a government penalty. The plaintiff does not need to wait until he is hurt to file a lawsuit when the plaintiff can clearly show that he WILL be hurt. This lawsuit is to prevent the plaintiff from being hurt by a clearly foreseeable damage." *Id.* (emphasis in original.).

He also reiterates his allegation that his constitutional rights are infringed upon by the ACA and states that "[n]owhere does the [C]onstitution allow the government to force all individuals to have health insurance." *Id.* at pp. 2-3. He then attempts to distinguish *Baldwin v. Sebelius*, No. 10CV1033 DMS (WMC), 2010 U.S. Dist. LEXIS 89192, 2010 WL 3418436 (S.D.Cal. Aug. 27, 2010), cited by defendants, by contending that it "does not apply to plaintiff because the plaintiff in this case does not want minimum coverage by 2014 and instead the plaintiff believes it is his constitutional right to decide to have no private health coverage at all and the defendants forcing the plaintiff to have coverage extends beyond the defendants' authority and infringes upon the plaintiff's constitutional rights." *Id*. at p. 3. He further reasserts his position that the Act violates privacy rights. *Id.* Plaintiff's response finally argues that the questions of "how the defendants will access

4

plaintiff's personal health records, and how the defendants will determine what is qualifying insurance, present issues that are serious enough to be examined by the court." *Id.* at p. 4.

*Defendants' Reply*

On December 20, 2010, the defendants replied in support of their motion to dismiss and addressing the plaintiff's response. *See Defendants' Reply Memorandum* (doc. #17). The defendants argue that the new purported facts contained in the plaintiff's response do not establish any actual or imminent injury. *Id.* at p. 2. The defendants assert that many facts related to the plaintiff are still unclear, and the lack of facts render his claim of injury speculative and hypothetical rather than imminent. *Id.* at p. 3. The defendants go on to reiterate the plaintiff's alleged failure to assert any fact establishing an injury, arguing that this distinguishes his case from other cases where the plaintiffs established standing to sue under the ACA. *Id.* at p. 3.

**Discussion**

A.     Motions to Dismiss for Lack of Subject Matter Jurisdiction

Where dismissal is sought for lack of subject matter jurisdiction, the proper procedure is a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(1). *Cupit v . United States*, 964 F. Supp. 1104, 1107 (E.D. La. 1997) (citing *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1156-57 (5th Cir. Unit B March 1981). If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.), *cert. denied* 536 U.S. 960 (2002)(citations omitted); *see also Goudy-Bachman v. United States Dep't of Health and Human Svcs.*, No. 1:10-CV-763, __F. Supp. 2d__, 2011 U.S. Dist. LEXIS 6309, 2011 WL 223010 at *3 (M.D. Pa. Jan. 24, 2011) (citing *Tolan v. United States*, 176 F.R.D. 507, 509 (E.D. Pa. 1998) ("[w]hen a motion is premised on both lack of subject matter jurisdiction and another Rule 12(b) ground, mootness concerns dictate that the court address the issue of jurisdiction

first."))  A motion to dismiss for lack of subject matter jurisdiction must be considered before any

other challenge because the court must find jurisdiction before determining the validity of a claim.

*Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal citations omitted).

When considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction,

the court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts

evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's

resolution of disputed facts.  *Bryan v. Stevens,* 169 F. Supp. 2d 676, 681 (S.D. Tex. 2001) (citing

*Den Norske Stats Oljeselskap As v. Heeremac Vof*, 241 F.2d 420, 424 (5th Cir. 2001), *cert. denied*

534 U.S. 1127)).  In reviewing the plaintiff's pleading, the Court will consider whether it has the

statutory or constitutional power to adjudicate this case.  *See Neinast v. Texas*, 217 F.3d 275, 278

n.6 (5th Cir.), *cert. denied* 531 U.S. 1190 (2001).  The burden of proof for a Rule 12(b)(1) motion

to dismiss is on the party asserting jurisdiction.  *Ramming*, 281 F.3d at 161 (citations omitted).

Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist.

*Id.  See also Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (1998) (the party seeking to

invoke the jurisdiction of a federal court carries the burden of demonstrating that jurisdiction is

proper).

B.  Jurisdiction and Standing

Federal district courts have never been given the full general jurisdiction of state district

courts and therefore have limits on the cases they may adjudicate.  *Kokkonen v. Guardian Life Ins.*

*Co. of Am.*, 511 U.S. 375, 377 (1994); *In re Bissonnet Invs. L.L.C.*, 320 F.3d 520, 525 (5th Cir. 2003).

This court only possesses the power authorized by the Constitution and statute.  The only court

created by the Constitution of the United States is the Supreme Court. U.S. CONST. art. III, § 1, cl.

1. Congress was authorized to create federal district courts, but was allowed to limit their

jurisdiction.  *Id.*  Article III, Section 2 of the Constitution limits the power of federal courts to

adjudication of actual cases and controversies.  U.S. CONST. art. III, § 2, cl. 1.

It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.  *Kokkonen*, at 377.   Federal district courts are required to determine if they have jurisdiction in a case, on their own, regardless of whether the parties raise the issue.  It follows that before the undersigned can address the legal merits of plaintiff's claims, the Court must first confirm that it exercises proper jurisdiction over his causes of action, an issue presented by the defendants' motion.

In limiting the judicial power to "Cases" and "Controversies," Article III of the Constitution restricts it to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law.  *Summers v. Earth Island Inst.*, __U.S.__, 129 S. Ct. 1142, 1148, 173 L. Ed. 2d 1 (2009).  Except when necessary in the execution of that function, courts have no charter to review and revise legislative and executive action.  *Id.*  Citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *Los Angeles v. Lyons*, 461 U.S. 95, 111-112, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983).  This limitation is founded in concern about the proper – and properly limited – role of the courts in a democratic society.  *Summers*, 129 S. Ct. at 1148 (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)).

In order to give meaning to Article III's case-or-controversy requirement, the courts have developed justiciability doctrines, such standing and ripeness.  *Sample v. Morrison,* 406 F.3d 310, 312 (5th Cir. 2005); *see also Summers*, 129 S. Ct. at 1149 (the doctrine of standing is one of several doctrines that reflects the fundamental limitation of the case and controversy clause).  Standing requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction.  *Summers*, 129 S. Ct. at 1149 (internal quotations omitted, emphasis in original).

The fundamental aspect of standing focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated. *Flast v. Cohen*, 392 U.S. 83, 99, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968). The "gist of the question of standing" is whether the party seeking relief has alleged such a personal stake in the outcome of the controversy. *See id.*

The Supreme Court has articulated the constitutional requirements for standing as follows:

> (1) the plaintiff must have suffered an "injury in fact," (i.e., a "concrete and particularized" invasion of a "legally protected interest");
>
> (2) causation (i.e., a "fairly...trace[able]" connection between the alleged injury in fact and the alleged conduct of the defendant); and
>
> (3) redressability (i.e., it is likely and not merely speculative that the injury will be redressed by a favorable decision or remedied by the relief plaintiff seeks in bringing suit.)

*Lujan*, 504 U.S. at 560-561. Put another way, to seek injunctive relief, a plaintiff must therefore show that he is under threat of suffering an "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury. *Summers*, 129 S. Ct. at 1149 (citing *Friends of Earth, Inc. v. Laidlaw Environmental Serv. (TOC), Inc*., 528 U.S. 167, 180-181, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)); *see also Goudy-Bachman*, 2011 WL 223010 at * 5 (economic injury satisfies the injury in fact requirement of standing as long as the harm is concrete and particularized and actual or imminent; an injury is particularized when it affects the plaintiff in an a personal and individual way) (internal citations omitted). This requirement assures that "there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Id*. Citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221, 94 S. Ct. 2925, 41 L.

Ed. 2d 706 (1974). Where that need does not exist, allowing courts to oversee legislative or executive action "would significantly alter the allocation of power...away from a democratic form of government." *Id.* Quoting *United States v. Richardson*, 418 U.S. 166, 188, 94 S. Ct. 2940, 41 L. Ed. 2d 678 (1974) (Powell, J., concurring). The plaintiff bears the burden of showing that he has standing for each type of relief sought. *Id.* When the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish. *Id.* Quoting *Lujan*, 504 U.S. at 562. Generalized grievances are insufficient to confer standing. *Lujan*, 504 U.S. at 573-574.

In this case, the issues regarding standing relate only to the first element required under *Lujan*, namely the requirement that the plaintiff suffered an injury in fact. *See Mead v. Holder*, No. 10-950, ___F. Supp. 2d ___, 2011 WL 611139, 2011 U.S. Dist. LEXIS 18592 at *24 (D.D.C. Feb. 22, 2011) (analyzing standing to challenge ACA); *see also New Jersey Physicians, Inc. v. Obama*, ___F. Supp. 2d ___, 2010 U.S. Dist. LEXIS 129445, 2010 WL 5060597 (D.N.J. Dec. 8, 2010) ("[a]lthough all three elements have to be met, the injury-in-fact element is often determinative.") (also analyzing standing to challenge ACA, internal quotations omitted).

Standing and ripeness are jurisdictional questions which must be resolved as a preliminary matter. *See Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. Tex. 1989). Under the Federal Rules of Civil Procedure, standing challenges are dealt with by motion under Rule 12(b)(1) or on the court's own motion. *Id.* Courts determine standing from the circumstances as they exist *at the time the complaint is filed. See Friends of the Earth, Inc.*., 528 U.S. at 180 (2000) (emphasis added); *see also Thomas More Law Ctr. v. Obama*, 720 F. Supp. 2d 882, 890 (E.D. Mich. 2010) ("[f]or purposes of standing, the court looks at the circumstances as they exist at the filing of the complaint.")

D.  The ACA and Related Cases

Upon construing the plaintiff's complaint, it appears that he is specifically challenging Section 1501 of the ACA, which, in sum, requires non-exempted individuals either to maintain a minimum level of health insurance coverage or to pay a penalty, beginning in 2014.  *See* the ACA, Pub. L. No. 111-148, 124 Stat. 119 (March 23, 2010), § 1501.  As one of the backbone provisions of the ACA, Section 1501 mandates that all individuals, subject to certain exceptions, shall maintain minimum essential coverage beginning January 1, 2014, or be subject to a penalty included with a taxpayer's tax return.  *Id.* § 1501; *Goudy-Bachman*, 2011 WL 223010 at *2.  Following other courts, the undersigned will hereinafter refer to this requirement under Section 1501 as the "individual mandate" provision.  *See Goudy Bachman*, 2011 WL 223010 at *2; *Thomas More Law Ctr.*, 720 F. Supp. 2d at 887 n.1 ("[t]he term 'Individual Mandate'...in this opinion refers to the minimum coverage provision of the Act which requires that all private citizens maintain minimum essential coverage under penalty of federal law.")

The ACA is a massive piece of legislation, and numerous other lawsuits challenging its constitutionality have been filed across the country.  *See, e.g., Baldwin; Goudy-Bachman*; *Mead*; *New Jersey Physicians*; *Thomas More Law Center*; *supra*; *see also Florida v. United States Dep't of Health and Human Serv.*, 716 F. Supp. 2d 1120, 1128 (N.D. Fla. 2010);  *Virginia v. Sebelius*, 702 F. Supp. 2d 598 (E.D. Va. 2010); *Taitz v. Obama*, 707 F. Supp. 2d 1 (D.D.C. 2010); *Bryant v. Holder*, No. 2:10-CV-76-KS-MTP, 2011 WK 710693, 2011 U.S. Dist. LEXIS 23975 at *2 (S.D. Miss. Feb. 3, 2011);  *Liberty Univ. v. Geithner*, 2010 WL 4860299, 2010 U.S. Dist. LEXIS 125922 (W.D. Va. Nov. 30, 2010); *United States Citizens Ass'n v. Sebelius*, No. 5:10-CV-1065, 2010 WL 4947043, 2010 U.S. Dist. LEXIS 123481 (E.D. Nov. 22, 2010);  *Shreeve v. Obama*, No. 1:10-CV-71, 2010 WL 4628177, 2010 U.S. Dist. LEXIS 118631 at *2 (E.D. Tenn. Nov. 4, 2010).  A handful of the courts have reached a finding on the merits, with mixed results.  *See Florida v. United States*

*Dep't of Health and Human Serv.; Virginia v. Sebelius; Thomas More Law Ctr.; Baldwin, supra.* The controversy surrounding the ACA is significant, as is the public's interest in the substantive reforms contained in the Act. *Mead*, 2011 U.S. Dist. LEXIS 18592 at *4. Some of those cases are moving through the appellate process, presumably with the constitutionality issue to be ultimately decided by the United States Supreme Court. *See, e.g. Florida v. United States Dep't of Health and Human Serv.,* No. 3:10-CV-91, 2011 U.S. Dist. LEXIS 22464 (N.D. Fla. March 3, 2011) (staying summary declaratory judgment on constitutionality of ACA pending appeal and stating "[a]lmost everyone agrees that the Constitutionality of the Act is an issue that will ultimately have to be decided by the Supreme Court of the United States"); *Mead*, at *4 ("i]t is highly likely that a decision by the United States Supreme Court will be required to resolve the constitutional and statutory issues which have been raised.") Those issues are not before the Court at this juncture in the litigation.

Finding guidance from other courts considering the same standing issues related to the ACA, the Court notes that at this stage in the case, the undersigned's task is simpler and more narrow than reaching the merits of the plaintiff's claims and determining the constitutionality of the Act. *See Florida v. United States Dep't of Health and Human Serv.*, 716 F. Supp. 2d at 1128. Rather, at this point, the undersigned must only decide if this court has jurisdiction to consider the plaintiff's claims. *Id.* As other courts have prudently done, the Court also emphasizes that in making a finding on the jurisdictional issue, the undersigned expresses no opinion on the merits of the plaintiff's or defendants' arguments regarding the constitutionality of the ACA. *See, e.g., Shreeve v. Obama*, 2010 U.S. Dist. LEXIS 118631 at *2; *see also Mead*, 2011 U.S. Dist. LEXIS 18592 at *4 ("[n]eedless to say, this Court's personal views on the necessity, prudence, or effectiveness of the Affordable Care Act are of no moment whatsoever"). It is not this Court's "task or duty to wade into the thicket of conflicting opinion" on any of the public policy matters implicated by this case. *Bryant* , 2011 U.S. Dist. LEXIS 23975 at *2 (quoting *Florida v. United States Dep't of HHS*, 716

F. Supp. 2d at 1128).  Rather, the present task is solely to determine whether the Court has jurisdiction over this matter.  *Id.*

This Court benefits from the fact that several other courts have already considered the standing issue as related to the ACA under various factual scenarios.  Rather than revisiting the analysis anew, the undersigned will rely on the judges who have considered the issue before this Court.  Accordingly, the Court briefly outlines a number of those relevant cases below before considering Bellow's standing to sue in this particular case.  As United States District Judge Keith Starrett (from another district within the Fifth Circuit) pointed out:

> "Of course, standing has been addressed by other courts in cases involving challenges to the minimum essential coverage provision.  Most frequently, the dispute has been whether the plaintiffs asserted an 'actual or imminent' injury.  Defendants have frequently argued -- as they do here -- that the plaintiffs' alleged injuries are too remote temporally to confer standing, that the future injuries are too uncertain or speculative to confer standing, and that any present injuries are not fairly traceable to the minimum essential coverage provision insofar as they are the product of the plaintiffs' own choices.  Before the Court conducts its own analysis, prudence demands that it review the decisions of other District Courts in these matters."

*Bryant,* 2011 U.S. District LEXIS 23975 at *11-*12.

In the *Florida* case, United States District Judge Roger Vinson found that the plaintiffs had standing.  In that case, the plaintiffs included sixteen state attorneys general, four state governors, two private citizens, and an independent business organization, the National Federal of Independent Business ("NFIB").  *Florida v. United States Dep't of HHS*, 716 F. Supp. 2d at 1127.  Judge Vinson specifically concluded that the individual plaintiffs had standing despite the fact that a number of occurrences could alter their personal circumstances with respect to health insurance and the

individual mandate provision.  *Id.* at 1146-1147.  In support, Judge Vinson explained that

> "[i]t is...'possible' that by 2014 either or both the plaintiffs will no longer be alive, or may at that time fall within one of the 'exempt' categories. Such 'vagaries' of life are always present, in almost every case that involves a pre-enforcement challenge.  If the defendants' position were correct, then courts would essentially never be able to engage in pre-enforcement review. Indeed, it is easy to conjure up hypothetical events that could occur to moot a case or deprive any plaintiff of standing in the future."

*Id.* at 1147.  Accordingly, in the *Florida* case, the Court concluded that to challenge the individual mandate, the individual plaintiffs need merely establish a "realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement that is reasonably pegged to a sufficiently fixed period of time, and which is not merely hypothetical or conjectural."  *Id.*  (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979); *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1194 (11th Cir. 2009); *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1161 (11th Cir. 2008)).  In that case, because the individual plaintiffs pled factual details alleging that they were forced "to divert financial resources from their business endeavors" and "reorder their economic circumstances" in preparation for the enforcement of the individual mandate provision, the court found that they had standing to challenge its constitutionality.  *Id.* at 1145.  Significantly, the individual plaintiffs in that case did plead specific facts about themselves, including one being a small business owner, the fact that they had no health insurance and that they chose not to obtain health insurance for several reasons, they did not qualify for Medicaid or Medicare and did not expect to qualify prior to 2014, and one was financially able to pay for their own healthcare services.  *Id.*

In the *Virginia* case, United States District Judge Henry Hudson also found that the plaintiff in that case - the Commonwealth of Virginia, through its attorney general - had standing to challenge

Section 1501. The *Virginia* case did not involve any individual plaintiffs, and the standing issue related to Virginia's allegation that it had stated an immediate injury insofar as it had began taking steps to prepare for the implementation of the ACA. *See Virginia v. Sebelius*, 702 F. Supp. 2d at 603. That case did not involve individual plaintiffs but rather dealt with issues being faced by the Commonwealth as a whole as it began navigating the administrative response to the changes in federal law and asserted the challenges it faced due to the conflict between the ACA and Virginia law. *See id.* Accordingly, this Court finds the standing analysis in *Virginia* distinguishable from the case at hand.

In *Shreeve v. Obama*, the District Court dismissed the plaintiffs' challenge for lack of standing because "not one plaintiff has shown such a personal stake in the outcome of the controversy as to assure...concrete adverseness" by alleging a particularized injury stemming from the ACA. *Shreeve*, 2010 U.S. Dist. LEXIS 118631 at *9-*10 (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497, 516, 127 S. Ct.1438, 167 L. Ed. 2d 248 (2007)). United States District Judge Curtis L. Collier pointed out that the individual plaintiffs "do not allege they will be 'compelled by the federal government to purchase health care coverage'; nor have the individual Plaintiffs 'claim[ed] they have [re]arranged their personal affairs [presently]' or changed their behaviors to account for a future economic harm." *Id.* at * 10. Quoting *Thomas More Law Ctr.*, 2010 WL 3952805, at *2-3 (E.D. Mich. Oct. 7, 2010). Based on the lack of factual specificity in the plaintiffs' complaint, the *Shreeve* Court concluded that the plaintiffs failed to clearly and specifically set forth facts sufficient to establish standing and accordingly held that it lacked jurisdiction. *Id.* at *9-*11.

In *Thomas More Law Center*, the plaintiffs were a national public interest law firm and four individual plaintiffs. 720 F. Supp. 2d at 886-887. The individual plaintiffs did not have private health care insurance. *Id.* The individual plaintiffs claimed that they had "arranged their personal affairs such that it will be a hardship for them to have to either pay for health insurance that is not

necessary or face penalties under the Act." *Id.* at 887-888.  The *Thomas More* court focused on the fact that the plaintiffs had alleged a present harm, specifically, that they were being compelled to reorganize their affairs, undertake financial planning well in advance of the implementation of the individual mandate provision in 2014, and decide to forego certain spending today to have the funds to pay for health insurance when the individual mandate takes place.  *Id.* at 888-889.  The court found that these pled economic injuries were fairly traceable to the Act for purposes of conferring standing, noting that "there is nothing improbable about the contention that the Individual Mandate is causing plaintiffs to feel economic pressure today."  *Id.* at 889.

In *Liberty University, Inc., v. Geithner*, the plaintiffs were comprised of a Christian university and individuals who challenged the individual mandate.  2010 U.S. Dist. LEXIS 125922 at *8.  The plaintiffs claimed that the mandate's impending enforcement forced them to make significant and costly changes in their personal financial planning, necessitating significant lifestyle changes and extensive reorganization of their personal and financial affairs.  *See id.* at *17-*18.  The individual plaintiffs were individuals whose financial budgets do not include health insurance, and in order to accommodate the substantial cost of purchasing a policy, they "will arguably need to make lifestyle changes."  *Id.* at *26.  The *Liberty University* court explained that the present or near-future costs of complying with a statute that has not yet gone into effect can be an injury in fact sufficient to confer standing.  *Id.* at *20.  The court also found that the plaintiffs' allegations plausibly stated that if the Act were in force today, they would be obligated by the health insurance coverage requirements to purchase or provide coverage.  *Id.* at *21.  This showed that the plaintiffs had good reason to believe they will continue to fall under the auspices of the Act in 2014, thus requiring financial planning and preparation costs in the near term, without knowledge of what their status under the Act may be in 2012.  *Id.*  Based upon this factual scenario, the *Liberty University* court ultimately concluded that the allegations to support standing were plausible and sufficiently specific

to survive the motion to dismiss.  *Id.*  at *26.

In *Baldwin v. Sebelius*, the plaintiffs were an individual who was formerly a member of the California Assembly and an educational and legal defense organization.  2010 WL 3418436 at *1. United States District Judge Dana M. Sabraw of the Southern District of California concluded that the plaintiffs lacked standing to challenge the ACA because they had not alleged any particularized injury stemming from various provisions of the ACA.  *Id.*  at *3-*4.  Specifically regarding the individual plaintiff, the court noted that he did not indicate whether he has health insurance but concluded "that is of no moment because, even if he does not have insurance at this time, he may well satisfy the minimum coverage provision of the Act by 2014; he may take a job that offers health insurance, or qualify for Medicaid or Medicare, or he may choose to purchase health insurance before the effective date of the Act."  *Id.* at *3.  The court found that "simply put, Baldwin fails to allege a particularized injury" and that he "failed to demonstrate that the Act has caused him injury." *Id.*  at *4.

In *New Jersey Physicians, Inc. v. Obama*, a professional medical group, a doctor, and an individual patient challenged the ACA.  2010 WL 5060597 at *1.  The individual patient plaintiff argued that he had standing because "he does not have qualifying insurance presently and he does not plan to purchase insurance in the future."  *Id*. at *4.  The court concluded that, based on the lack of allegation that he will be unemployable or unable to secure insurance in 2014, and the fact that he may have insufficient income in 2014 to become liable for the penalty under the individual mandate, the individual plaintiff's claims were conjectural and speculative at best and that he lacked standing.  Contrasting the facts in *Thomas More*, the *New Jersey Physicians* Court pointed out that the plaintiff did not allege any immediate injury, such as being forced to rearrange his personal affairs or an imposition of financial pressure in order to pay for the insurance.  *Id.*  at *4.

In  *Goudy-Bachman v. United States Department of Health and Human Services*, the

individual plaintiffs asserted that they had suffered both an economic harm and a non-economic harm as a result of the individual mandate because they were unable to finance a contact on a new vehicle and must rearrange and evaluate their finances before the mandate becomes effective.   2011 WL 223010 at *5.   They therefore claimed that the mandate, though not currently operative, immediately effects a negative impact on their long-term purchasing power, thereby causing an injury-in-fact and also caused non-economic harm in the form of deprivation of the use and enjoyment of a new car.   *Id.*  at *5.   Likening the plaintiffs' situation to the allegations of the individual plaintiffs in the *Thomas More* and *Florida* cases, the *Goudy-Bachman* court found that the plaintiffs had alleged immediate economic pressure as a direct result of the individual mandate and this was fairly traceable to the individual mandate provision and sufficient to establish standing. *Id.*  at *6-*7.

*Mead v. Holder* involved several individual plaintiffs who specifically alleged that they could afford health insurance coverage, but chose not to purchase it in the past and do not wish to purchase it in the future.  2011 U.S. Dist. LEXIS 18592 at *8-*9.   The court concluded that while one of the plaintiffs lacked standing because it was unlikely that she would be subject to Section 1501's penalty provision in 2014, the Court maintained subject matter jurisdiction because at least one of the other plaintiffs had standing.  *Id.*  at *19-*20.  Specifically, the court concluded that plaintiffs' allegation that, because of their various individual circumstances,  it is "highly likely" that they will be required to either purchase health insurance or make an annual shared responsibility payment in 2014 was sufficient to show a substantial probability that they will remain subject to the individual mandate provision in 2014 and thus sufficient to establish standing.  The court explained that "[i]n this case, the ACA's individual mandate provision is similarly[1] final and, absent action by the courts or Congress, the federal government will begin to impose penalties on qualifying individuals who

---

[1]Comparing the ACA to an order by the FAA in *Village of Bensenville v. FAA*, 376 F.3d 1114 (D.C. Cir. 2004).

refuse to obtain minimum essential coverage in 2014." *Id.* at *24.   Like in other cases cited above, the plaintiffs in *Mead* also pled that they were being forced to set aside money now which prevents them from using that money for discretionary spending, charitable donations, or paying debts, thus requiring them to adjust their lifestyles accordingly. *Id.* at * 26.  The *Mead* court used these factual allegations in finding that the plaintiffs' pleading established a future injury sufficient for standing purposes. *Id.* at *25-*26.

Finally, in *Bryant v. Holder*, after much analysis, Judge Starrett concluded that ten of the plaintiffs - all individuals who do not possess health insurance and who do not intend to comply with the individual mandate - had not alleged facts sufficient to establish that they have standing to challenge the constitutionality of the minimum coverage provision of the ACA.  2011 U.S. Dist. LEXIS 23975 at *5, *35.  In that case, the plaintiffs' alleged injuries were  1) the economic harm of having to purchase health insurance, 2) the economic harm of having to pay a tax penalty in the event they do not purchase health insurance, or 3) the economic harm of having to arrange their financial affairs to prepare for such expenditures. *Id.* at *33.  The Court concluded that based upon the pleading, it was not certain that they will be forced to purchase insurance or, alternatively, to pay a tax penalty. *Id.* The plaintiffs did not allege facts establishing that they will certainly be "applicable individuals" who must comply with the minimum coverage provision. *Id.* Citing 26 U.S.C. § 5000A(a), (d).  "Plaintiffs simply alleged that they will be subject to the minimum essential coverage provision -- a bare legal conclusion which the Court may not accept as true." *Id.* at *34.  Based upon this above-described lack of factual specificity, Judge Starrett found that the plaintiffs lacked standing to challenge the individual mandate.

E.  Application

Having considered the above-cited cases and construing the plaintiff's complaint in the most favorable light, the Court concludes that he lacks standing to challenge the individual mandate

provision of the ACA.  The only harm specifically alleged by plaintiff in his complaint is that he is

> "an American citizen whose constitutional rights have been infringed upon by said Act
> through he Act's future tax penalty that could be imposed on him for simply being alive in
> America and through the Acts requirement to have health insurance which goes beyond the
> realm of regulating and enters the realm of forcing a citizen to buy a private, personal service
> against their [sic] will."

*See Complaint*, at p. 1.

Like the plaintiffs in the *Shreeve* case, the Court concludes that Bellow's complaints about the ACA merely equate a generally available grievance about government, claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him that it does the public at large.  *See Shreeve*, 2010 U.S. Dist. LEXIS 118631 at *9 (citing *Lujan*, 504 U.S. at 573).  Such a generalized grievance does not state an Article III case or controversy.  *Id.*  The plaintiff here has not set forth facts in his pleading which clearly and specifically establish standing, and he has not shown the personal stake that he specifically has in the application of the ACA.  *Id.*  He has not alleged a particularized injury stemming from the ACA.  *See id.*  at *9-*10.  Bellow's complaint alleges nothing specific about his individual situation relative to the applicability of the individual mandate provision.  He does not plead any information about his financial situation, his employment, whether he has health insurance presently or intends to purchase it in the future, or if he would qualify for Medicaid or Medicare.  This case is therefore distinguishable from the cases above where the courts found standing.  For example, Bellow has not alleged that he rearranged his personal affairs, changed his financial behaviors to prepare for the individual mandate, or averred that he is presently suffering economic harm or will suffer economic harm in the future.  *See, e.g., Thomas More; Liberty Univ.; Goudy-Bachman; supra.*

Furthermore, the plaintiff's attempt to add facts about himself in his response to the motion to dismiss does not improve his standing status. First, as stated above, standing is determined at the time of the filing of the complaint. *See Friends of the Earth*., 528 U.S. at 180; *Thomas More*, 720 F. Supp. at 890. Secondly, even considering the plaintiff's additional allegation that he is "a 26 year old working male and does not get free health insurance coverage and is not exempt from having coverage," this does not change the tenuous and vague nature of his claims as related to the implementation of the ACA. He still has not averred any facts about his financial situation or whether he has health insurance presently or if he intends to obtain it in the future. His allegations focus on the general principal that he should not be forced to buy health insurance, but he does not specify how the provisions of the ACA actually affect him personally. His complaint does not allege that he will be unemployable in 2014 or unable to secure insurance with his employer in 2014. *See New Jersey Physicians*, 2010 WL 5060597 at *4. He also does not offer any facts suggesting that even if he does not obtain insurance, he may have insufficient income in 2014 to become liable for any penalty. *Id.* Citing *Thomas More*, 720 F. Supp. 2d at 888. Accordingly, because the plaintiff has pled minimal facts about his personal situation and failed to plead specific information about his employment, financial information, and whether he is insured, there is a real possibility that he will neither have to pay for insurance nor be subject to the penalty. *Id.* Hence, his claims are conjectural and speculative at best, and he consequently does not have standing to challenge the ACA because allegations of possible future injury do not satisfy the requirements of Article III. *Id.* "A threatened injury must be 'certainly impending' to constitute injury in fact." *Id*. Quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990).

The plaintiff's alleged injury - that he will be forced to pay for private health care in 2014 or subjected to the tax penalty - is also purely hypothetical because he has not alleged any immediate injury and his alleged injury is speculative at this point, especially in light of the fact that claims of

future injury are insufficient to provide standing where the acts necessary to make the injury happen are at least partly within the plaintiff's control. *See id.* Citing *Baldwin*, 2010 WL 3418436 at *3; *Thomas More*, 720 F. Supp. 2d at 888. Just as the court may not imagine circumstances that would deprive a plaintiff of standing, it likewise may not imagine circumstances that would confer standing upon a plaintiff. *Bryant*, 2011 U.S. Dist. LEXIS 23975 at *31. If a plaintiff desires to challenge the constitutionality of a law, it must be clear from the allegations of the plaintiff's complaint that the law will certainly be enforced upon the plaintiff. *Id.* Citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990). Bellow has failed to plead facts establishing this certainty. His allegation that he will be subject to the individual mandate, without sufficient facts to support this conclusion, does not establish the applicability of the ACA in Bellow's case necessary to support standing.

Additionally, as explained above, Bellow has not pled any present injury, such as current rearrangement of his finances or any imposed financial harm that he is having to undertake as a result of the impending individual mandate. In fact, he argues that "he does not need to wait until he is hurt to file a lawsuit when the plaintiff can clearly show that he WILL be hurt." *See Response*, at p. 2. The Court has already determined that the plaintiff has not shown that he will be hurt with the requisite level of specificity, and this statement further supports the undersigned's determination that the plaintiff has not pled any current injury in fact as other plaintiffs challenging the ACA have done in the cases described herein.

For these reasons, Bellow has wholly failed to set forth facts establishing that he has Article III standing to challenge the individual mandate provision of the ACA. Accordingly, this Court determines that it lacks jurisdiction to adjudicate his challenge to the ACA, and this case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

**Conclusion and Recommendation**

Based upon the findings and legal reasoning stated herein, the undersigned United States Magistrate Judge recommends that the District Court **grant** the defendants motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction (doc. # 15).  The Court also recommends that the plaintiff's claims be dismissed in their entirety, without prejudice, for lack of subject matter jurisdiction.

**Objections**

Objections must be:  (1) specific, (2) in writing, and (3) served and filed within fourteen (14) days after being served with a copy of this report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b), and 72(b).

A party's failure to object bars that party from:  (1) entitlement to de novo review by a district judge of proposed findings and recommendations, *see Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error of unobjected-to factual findings and legal conclusions accepted by the district court, *see Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED this the 21st day of March, 2011.**


KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE